Filed 6/11/13  P. v. Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LYMOND WILLIAMS,<br><br>Defendant and Appellant. | D061741<br><br>(Super. Ct. No. SCD237956)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing is denied.

It is ordered that the opinion filed herein on May 17, 2013, be modified as follows:

On page 6, the introductory phrase of the first sentence in the fourth paragraph is changed to read:

The court later considered the following proposed instruction:

**There is no change in the judgment.**

McCONNELL, P. J.

Copies to:  All parties

Filed 5/17/13  P. v. Williams CA4/1 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| THE PEOPLE, | D061741 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD237956) |
| LYMOND WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Lymond Williams guilty of selling cocaine base and possessing cocaine base for sale. (Health & Saf. Code, §§ 11352, subd. (a), 11351.5.) Williams later admitted the truth of allegations regarding a prior drug conviction (Health & Saf. Code, § 11370.2, subd. (a)), one prior strike (Pen. Code, § 667, subds. (b)-(i)), and that he had served six prior prison terms (Pen. Code, § 667.5, subd (b)). After dismissing the admitted strike in the furtherance of justice, the court imposed a 12-year sentence.

Williams's appellate contentions concern the disruptive conduct of his codefendant, Ricky Brooks, during trial. Williams contends the court erred by denying his mistrial motions and refusing to instruct the jury that it could not consider Brooks's disruptive conduct in evaluating Williams's guilt. We determine there was no prejudicial error and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

In December 2011, San Diego Police Detective Radford Pajita was working as an undercover officer in the East Village area of downtown San Diego. Detective Pajita was approached by Brooks, who was wearing a Santa Claus hat and pushing a shopping cart. Detective Pajita indicated he was looking for $20 worth of narcotics. Brooks said he knew where he could obtain the drugs, and Detective Pajita told Brooks he would give him $5 for facilitating the deal.

After Brooks and Detective Pajita walked for a few blocks, Williams approached them. Brooks told Williams they were looking for "a twenty." Williams said, " 'Come over here. I got you, man.' " Detective Pajita saw Williams walk towards a vehicle and pull a plastic bag out of his pants. Detective Pajita then saw Williams take a small bindle

2

out of the plastic bag, place the bindle in his mouth, and then return the plastic bag to his waistline area.

Detective Pajita then gave Brooks two prerecorded $10 bills. Brooks handed the money to Williams, and Williams pulled the bindle out of his mouth and gave it to Brooks.

After Brooks and Detective Pajita walked away, Detective Pajita gave Brooks a prerecorded $5 bill and Brooks gave Detective Pajita the bindle containing cocaine base. Detective Pajita gave a predetermined bust signal to other police officers, and described both suspects. Police officers received the description and began following Williams. They detained and arrested Williams after they saw him drop a bag containing 13 individually wrapped rocks of cocaine base. Officers found the two prerecorded $10 bills in Williams's pants pocket.

A joint trial was held for Williams and Brooks.

Brooks testified at trial, denying that he took any part in facilitating Detective Pajita's drug purchase. Brooks said he did not know Williams and had never seen him before they were both arrested for the drug sale. Although the prerecorded $5 was found in his pocket, Brooks said he had found the bill on the ground.

Williams did not testify. His counsel argued the prosecution had not proved its case against Williams. Williams's counsel asserted that the police officers were biased and challenged the officers' ability to identify Williams and accurately observe his conduct during and after the drug transaction.

3

As detailed below, the court denied Williams's motions for mistrial based on Brooks's disruptive behavior during trial.

The jury found both defendants guilty as charged.

DISCUSSION

I. *Mistrial Motions*

Williams contends the trial court erred by denying his mistrial motions based on disruptive conduct by his codefendant Brooks.

A. *Relevant Trial Court Proceedings*

On the second day of trial, the trial court admonished Brooks outside the presence of the jury regarding his disruptive behavior during trial. The court indicated this conduct consisted primarily of making spontaneous comments in front of the jury. The court told Brooks his conduct would not be tolerated and it was prejudicing his case. The court said that if Brooks continued the conduct he would be subject to "severe consequences," including being held in contempt or facing additional criminal charges.

Williams's trial counsel said she agreed with the court's comments, and requested a mistrial and an order severing the cases. She said that Brooks had made "continual outbursts during the course of the trial," and this conduct was "reflecting poorly on the defense . . . team as a whole." During this discussion, Brooks continued to speak directly to the court without first discussing these comments with his counsel.

After the lunch recess, the trial court held a hearing on Brooks's *Marsden* motion. During the hearing, the court again spoke at length with Brooks about the need to control

4

himself during trial. At the end of the hearing, the court denied Brooks's *Marsden* motion.

When the court was back in session and before bringing in the jury, the court indicated it would deny Williams's mistrial motion because Williams's rights were not prejudiced in a manner that would warrant a new trial. Williams's counsel disagreed with the ruling, noting that Williams and Brooks were charged with being involved in the same drug transaction and they were sitting near each other during trial. She stated that under those circumstances, "Mr. Brooks' . . . repeated outbursts, and being repeatedly admonished by his attorney on the record in front of the jury reflects poorly not only on him, but I think it reflects poorly on my client as well. [I] think at this point impeding my client's ability and his right to a fair trial in front of this jury."

The prosecutor responded that Brooks's improper behavior consisted primarily of "[g]rumbling under this breath, rolling his eyes, looking up [at] the ceiling, and doing other gestures with his body," and argued that this conduct did not rise to the level of misconduct that would substantially prejudice Williams's rights. The court agreed and adhered to its ruling, but again strongly admonished Brooks to refrain from acting in a disruptive and disrespectful manner.

The next day, while testifying, Brooks became highly agitated when the prosecutor asserted numerous objections. Brooks indicated he wanted to tell his story and was frustrated that he was unable to do so. When the prosecutor would make objections, Brooks would look annoyed, roll his eyes, sigh loudly, and push himself away from the microphone.

After several minutes of this conduct, the court took a break to admonish Brooks, telling him that "[a]ll you're doing is prejudicing your case and prejudicing Mr. Williams' case." The court stated that Brooks was acting disrespectfully to the court, the jury, his codefendant, counsel and staff.

At that point, Williams's counsel renewed her "motion for mistrial and severance." She argued that Brooks's conduct was "interrupting and impeding and affecting Mr. Williams' ability to have a fair and impartial jury hear his case and render a fair and impartial verdict on his behalf that is not being tainted by the codefendant." The court responded: "I'm going to deny the motion for mistrial, but if it comes up again, I'm going to grant it. I'm not going to tolerate any more outbursts, and any more problems or misconduct out of [Brooks]."

During the remainder of the trial, including during Brooks's lengthy cross-examination, there is no indication that Brooks continued his disruptive behavior.

Williams's counsel later proposed the following jury instruction: "During the course of the trial, you may have heard and/or observed Mr. Brooks making comments or gestures. You may not consider Mr. Brooks' conduct in determining [Williams's] guilt in this case." Brooks's counsel objected, suggesting that a juror could conclude from the instruction that it was permissible to infer Brooks's guilt from his disruptive conduct. The trial court agreed, and declined to give the instruction. The court said the instruction "isolat[es] one [defendant] against the other," and noted the jury would be given the standard instruction that it should generally consider only facts presented as evidence.

6

The court later instructed the jury pursuant to the standard instructions, including: "You must decide what the facts are in this case. You must use only the evidence that was presented in this courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence . . . ." (See CALCRIM No. 222.) The jury was also instructed that "[y]ou must disregard anything you saw or heard when the court was not in session, even if it was done or said by one of the parties or witnesses."

### B. *Court Did Not Err in Denying Mistrial Motions*

"A trial court should grant a motion for mistrial 'only when " 'a party's chances of receiving a fair trial have been irreparably damaged' " ' [citation], that is, if it is 'apprised of prejudice that it judges incurable by admonition or instruction' [citation]. 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.] Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion." (*People v. Avila* (2006) 38 Cal.4th 491, 573; accord, *People v. Dement* (2011) 53 Cal.4th 1, 39-40.)

The court did not abuse its discretion in denying Williams's mistrial motions. There is no showing Brooks's conduct prevented Williams from having a fair trial. Brooks's disruptive behavior did not concern the issues involved in the charges (the sale and the possession issues), and thus was not relevant to the jury's consideration of the evidence as to whether the prosecutor proved its case against Williams. Brooks's misconduct involved only his *own* inability to control himself and to follow court rules.

7

At most, the jury would favorably compare Williams with Brooks regarding the ability to act appropriately during the trial.

In challenging the court's denial of his mistrial motions, Williams relies primarily on the court's various references to the potential "prejudice" to Williams's case from Brooks's conduct. However, the court never stated or suggested it found that Williams's case was in fact prejudiced. Instead, viewed in context, the court was attempting to provide strong admonishment to Brooks that his behavior was unacceptable because it was creating difficulties for everyone in the courtroom, including the trial judge, the jurors, the prosecutor, both defense counsel, *and* codefendant Williams. Considered in their entirety, the court's comments do not suggest the court found prejudice to Williams's case in the sense that he was being denied a fair trial. The court's statements make clear that it understood the necessary legal grounds for declaring a mistrial, and it found the circumstances did not satisfy these grounds. The court's decision was amply supported.

## II. *Claimed Instructional Error*

Williams alternatively contends the court erred in refusing to instruct the jury that it could not consider Brooks's disruptive conduct in determining Williams's guilt.

" ' "[A] defendant has a right to an instruction that pinpoints the theory of the defense. . . ." ' [Citation.] The court, however, 'may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Bivert* (2011) 52 Cal.4th 96, 120.)

8

Williams's proposed instruction was argumentative because it allowed the jury to draw inferences favorable to Williams while isolating Brooks. As stated by the trial court, the instruction would tell the jury not to hold Brooks's conduct against Williams while permitting the jury to use the conduct against Brooks. It improperly isolated one defendant against the other.

Moreover, the court's refusal to give the instruction was not prejudicial. The evidence overwhelmingly pointed to Williams as the seller. Detective Pajita testified that he directly observed Williams giving the bindle to Brooks. Another police officer testified he saw Williams drop the other bindles shortly after the drug transaction. The undisputed evidence also showed the prerecorded money was found on Williams's person. On this evidentiary record, it is not reasonably probable that an instruction telling the jury to disregard Brooks's in-court behavior would have changed the outcome of the trial.

Additionally, there is no reasonable likelihood the jury would have penalized Williams based on his codefendant's conduct at trial. Because the disruptive conduct did not concern the charges against Williams, the evidence was irrelevant to the case. The jury was instructed that the prosecution must prove the charges beyond a reasonable doubt, and the jury must consider only the evidence presented by sworn testimony in deciding the charges and disregard anything they saw or heard when the court was not in session, even if committed by one of the parties.

Further, during closing arguments Williams's counsel reminded the jury that it could not consider Brooks's conduct in deciding whether the prosecutor proved its case

9

against Williams, stating: "[O]bviously this is a codefendant case. We have [Williams] and Mr. Brooks. I want you to also be able to keep in your mind these are different people, and they're being charged with different crimes. [The prosecutor] has to prove up all of the elements separately for both these two people. And, also, I think [Brooks's trial counsel] characterized Mr. Brooks as animated conduct at some point. And, also, don't let that affect your decision on [Williams], okay?"

Williams's counsel was referring to the portion of Brooks's counsel's argument wherein she noted that Brooks became frustrated and angry when the prosecutor made numerous objections during his testimony because it prevented him from telling his side of the story. Brooks's counsel said, "I'm thinking, I would have come undone a lot sooner than that. He's trying his best to explain what happened. And every time he said because, it was an objection. Well, that's a block as you're trying to express yourself." Counsel also said that there was required decorum in court, but sometimes frustrations "get the better of us."

Based on our review of the entire record, we are satisfied Williams had a fair trial, and an instruction concerning Brooks's in-court conduct would not have changed the outcome of the trial.

DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.